UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTHONY MURPHY,

                Plaintiff,              Case No. 1:21-cv-457

v.                                Honorable Robert J. Jonker

L. STERLE et al.,

                Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 3.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendants Yuki, Hadden, and Walczak. Plaintiff's First Amendment retaliation claim and his

Eighth Amendment claim against Defendant Sterle remain in the case.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Deputy Warden Michael Walczak, Resident Unit Manager (RUM) B. Hadden, Counselor Y. Yuki, and Correctional Officer L. Sterle.

Plaintiff alleges that on April 28, 2020, while housed in Unit 4 at IBC, he filed a Prison Rape Elimination Act (PREA) complaint against Defendant Sterle.  (ECF No. 1, PageID.6.) Defendant Sterle was "moved out of Unit 4 pending investigation of [Plaintiff's] allegations."  (*Id.*) However, she "had some of her co-workers write [Plaintiff] false tickets and tear [his] cell up for no reason."  (*Id.*)   Plaintiff communicated with Inspector Moyer (not a party), the PREA coordinator, who told him that "she would make sure there [was] no further retaliation from Sterle or her co-workers."  (*Id.*)

Plaintiff avers that on May 25, 2020, Defendant Sterle told Officer Shank (not a party) that Plaintiff was on loss of privileges (LOP) status even though he wasn't.  (*Id.*)  Officer Shank ordered Plaintiff to return to his cell.  (*Id.*)  Plaintiff "tried to get Shank to look at the LOP sheet or speak with a [sergeant] before [he] locked down and he took [Plaintiff] to segregation for [r]efusing to [l]ock [d]own."  (*Id.*, PageID.7.)

Plaintiff avers that "Sterle was trying to get [him] out of the housing unit so she could return but administration just kept sending [him] back to [U]nit 4."  (*Id.*)  Plaintiff attempted to explain the situation to Defendant Yuki on "several different" occasions, "telling him how Sterle was sending her friends at [him] for retaliation."  (*Id.*)   Defendant Yuki told Plaintiff he was "crazy."  (*Id.*)

A week or so later, while on the walk, Plaintiff heard another inmate ask Defendant Sterle why she was not in Unit 4 anymore, and she responded "that she can't work there because 'Murphy got me kicked out on a bullshit PREA.'" (*Id.*)  Plaintiff had never told any other inmates that he had filed a PREA complaint.  (*Id.*)  Plaintiff "didn't think anything of it at the time but [Defendant] Sterle asked the guys that asked her that what it would cost to get [Plaintiff] off the yard." (*Id.*)

On June 8, 2020, Plaintiff was walking back from the chow hall when another inmate walked up behind him and asked him what "[his] problem was with his girl, Ms. Sterle." (*Id.*)  Plaintiff "told him it wasn't any of his business and before [he] knew it [the other inmate] assaulted [him]." (*Id.*)  Plaintiff later learned the other inmate's name was Zachary Taylor.  (*Id.*) Plaintiff was taken to segregation following the assault.

On June 10, 2020, prior to leaving segregation, Plaintiff spoke to Defendant Hadden and told him that he "believed the assault came from Sterle because [he] wrote a PREA on her and she was taken out of Unit 4." (*Id.*)  Defendant Hadden asked Plaintiff "if [he] felt safe from future assault if they returned [him] back to Unit 4[,] and [Plaintiff] told him as long as Sterle wasn't there [he] would be okay." (*Id.*)

On June 11, 2020, Plaintiff spoke to Defendant Yuki again, telling him "what was going on and how Sterle orchestrated this assault to get [Plaintiff] off the yard." (*Id.*)  Defendant Yuki "assured [him] that Sterle would no longer be in that unit." (*Id.*)  Later that day, Plaintiff "heard Sterle's voice on the intercom saying 'female in the unit.'" (*Id.*)  Later that evening, Defendant Sterle was handing out COVID-19 test results from the week before. (*Id.*)  She stopped at Plaintiff's cell "and asked how they let [him] back into the unit, that [he] should have stayed gone." (*Id.*)

The next day, Plaintiff was assaulted again when walking back from the chow hall. (*Id.*)  Plaintiff told Defendants Hadden and Walczak that the assaults had been orchestrated by Defendant Sterle to retaliate against Plaintiff for "filing a PREA on her and getting her removed from Unit 4."  (*Id.*)  Plaintiff asked them to "send [him] to protective custody or ride [him] out." (*Id.*)  Defendants Hadden and Walczak told Plaintiff that he "was not protective custody material and instead did a Notice of Intent (NOI) for protection and placed [him] in long term administrative segregation and said [he] would remain there pending transfer."  (*Id.*)

Seven months later, administrative staff at IBC told Plaintiff that transfers were not happening because of COVID-19.  (*Id.*)  Plaintiff was returned to general population in Unit 5 "even though they had previously determined they could not keep [him] safe at IBC."  (*Id.*) Plaintiff avers that he later learned that inmate Zachary Taylor was also assigned to Unit 5.  (*Id.*) Inmate Taylor wrote "an affidavit saying [Defendant] Sterle offered to compensate him for assaulting" Plaintiff.  (*Id.*, PageID.8.)  Plaintiff avers that in the affidavit, inmate Taylor states that Defendant Sterle promised "he would not go to long term administrative segregation (as is the norm for fighting at IBC) and she would give him a TV if he assaulted [Plaintiff] once [Plaintiff] returned from segregation."  (*Id.*)  Plaintiff avers that as of the filing of his complaint, he "still ha[s] not been transferred and [is] still horrified at the possibility of a future attack at the hands of [Defendant] Sterle."  (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights.  (*Id.*)  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id.*, PageID.8–9.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

4

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

5

A.      **First Amendment Retaliation Claims**

Plaintiff maintains that Defendant Sterle violated his First Amendment rights by retaliating against Plaintiff after he filed a PREA grievance against her.  (ECF No. 1, PageID.8.) Plaintiff also suggests that Defendants Hadden and Walczak retaliated against him by placing him in administrative segregation for seven months but then ultimately placing him back in general population "with no mention of transfer even after [the] COVID pandemic is over."  (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

1.      **Defendant Sterle**

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Plaintiff has adequately alleged protected conduct: he states that he filed a PREA complaint against Defendant Sterle.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an

6

objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  Here, Plaintiff avers that Defendant Sterle had her co-workers write false misconduct tickets and "tear [his] cell up" for no reason.  (ECF No. 1, PageID.6.)  She also misinformed Officer Shank that Plaintiff was on LOP status which led to an inappropriate "refusing to lockdown" penalty.  (*Id.*)  Finally, Plaintiff alleges that Defendant Sterle offered to compensate other inmates for getting Plaintiff "off the yard" and orchestrated his assaults by two different inmates.  (*Id.*, PageID.7.)  Plaintiff, therefore, has alleged sufficient adverse action for purposes of the second prong of a retaliation claim.

Moreover, Plaintiff specifically alleges that Defendant Sterle expressed her dissatisfaction with Plaintiff because he filed the PREA grievance and the adverse actions were temporally proximate to the filing of the grievance and/or her expression of dissatisfaction.  Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  Plaintiff, therefore, has adequately alleged a First Amendment retaliation claim against Defendant Sterle.

### 2.      Defendants Hadden and Walczak

Plaintiff next states that Defendants Hadden and Walczak retaliated against him for filing a PREA complaint by "placing [him] in administrative segregation for 7 months under the guise of 'protecting' [him] from a MDOC employee pending transfer and nearly a year later, still not transfer[ring] Plaintiff, but merely plac[ing] Plaintiff in general population with no mention of transfer even after [the] COVID pandemic is over."  (ECF No. 1, Page ID.8.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendants Hadden and Walczak. He has not presented any facts whatsoever to support his conclusion that they retaliated against him because of the PREA grievance against Defendant Sterle. The only apparent connection between the protected conduct and the adverse action is that the former preceded the latter. As noted above, it is possible that a temporal relationship between the two might support an inference of retaliatory motive. But, with respect to Defendants Hadden and Walczak, weeks passed between the filing of the PREA grievance and Plaintiff's placement in administrative segregation, months passed between Plaintiff's placement in administrative segregation and his release into the general population, and many additional months passed between Plaintiff's return to the general population and Defendants' ultimate failure to effect a transfer. That is hardly the type of temporal relationship that suggests cause and effect.

Moreover, as to each of the allegedly adverse actions, the complaint offers a much less heinous motivation.  Plaintiff's allegations suggest that Hadden and Walczak placed Plaintiff in administrative segregation for his own protection pending a transfer.  (Compl., PageID. No. 1, PageID.8.)  Plaintiff's allegations suggest that the transfer never occurred because "no transfers were happening due to COVID,"  (*id.*),[1] not because Hadden and Walczak were punishing Plaintiff for filing a PREA grievance almost 9 months earlier.  And Plaintiff's allegations strongly support the inference that Plaintiff was released to the general population, specifically to Unit 5, because Plaintiff had previously told Hadden that he felt safe going to a unit so long as Sterle was not there.  (*Id.*)

Plaintiff's conclusory allegation of a retaliatory motive, without any supporting facts, fails to state a retaliation claim against Defendants Hadden or Walczak.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  His First Amendment claim against them will, therefore, be dismissed.

### 3.    Yuki's, Hadden's, or Walczak's responsibility for Sterle's retaliation

Plaintiff's complaint might also be liberally construed as an attempt to hold Yuki, Hadden, or Walczak responsible for Sterle's retaliation.  He alleges that he told each of those Defendants about Sterle's inappropriate actions, but they either did nothing, or did not do enough, to stop it.

Plaintiff fails to allege that Yuki, Hadden, or Walczak took any action against him, other than to suggest that Defendants failed to adequately supervise Sterle or respond to Plaintiff's

---

[1] Plaintiff alleges that the COVID explanation for no transfers was communicated by "administration at IBC," (Compl., ECF No. 1, PageID.8), not Hadden and/or Walczak.

complaints regarding Sterle.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it."  *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted).  We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Yuki, Hadden, or Walczak encouraged or condoned the conduct of Sterle, or authorized, approved or knowingly acquiesced in the conduct.  Indeed, he fails to allege any facts at all about their conduct.  His vague and conclusory allegations of their roles are insufficient to demonstrate that Defendants were personally involved in the retaliatory conduct of Sterle.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  Thus, Plaintiff has failed to state a claim that Defendants Yuki, Hadden, or Walczak might be liable for Sterle's retaliatory conduct.

### B.    Eighth Amendment Failure to Protect Claims

Plaintiff also suggests that Defendants Yuki, Hadden, and Walczak failed to protect him from the known threat posed by Defendant Sterle even after Plaintiff reported her retaliatory actions.  (ECF No. 1, PageID.8.)  The Court construes Plaintiff's claim to be brought pursuant to the Cruel and Unusual Punishments Clause of the Eighth Amendment.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff.  *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995).  Deliberate indifference is a higher standard than

11

negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Moreover, inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

With respect to Defendant Yuki, Plaintiff avers that prior to June 8, 2020, he told Defendant Yuki about Defendant Sterle's retaliatory acts on "several different" occasions, telling him "how Sterle was sending her friends at [him] for retaliation." (ECF No. 1, PageID.7.) Defendant Yuki told Plaintiff he was "crazy." (*Id.*) Later, on June 11, 2020, Plaintiff told Defendant Yuki "what was going on and how Sterle orchestrated [the] assault [by inmate Taylor] to get [Plaintiff] off the yard." (*Id.*) Defendant Yuki told Plaintiff "that Sterle would no longer be

in [Unit 4]." (*Id.*)  Later that same day, however, Defendant Sterle was in Unit 4, stopped by Plaintiff's cell, and "asked how they let [him] back into the unit, that [he] should have stayed gone." (*Id.*)  Plaintiff, however, fails to allege facts suggesting that Defendant Yuki was personally aware of Defendant Sterle's presence on Unit 4 during the evening of June 11, 2020.  Indeed, Plaintiff's allegations indicate that Defendant Sterle was not on the unit for some period of time. (*Id.*, PageID.7) ("Sterle was trying to get me out of the housing unit so she could return . . . ." and "I heard another inmate ask C/O Sterle why she wasn't in Unit 4 anymore and she told them that she can't work there because 'Murphy got me kicked out . . . .").

Moreover, although Plaintiff alleges that he was assaulted again on June 12, 2020 (*id.*, PageID.7), nothing in the complaint plausibly suggests that Defendant Yuki was aware that Sterle had returned to the unit or that the assault would occur, with or without Sterle's presence, and failed to protect Plaintiff from it.  Nothing in the complaint as pleaded permits the Court to conclude that Defendant Yuki was aware of and consciously disregarded an excessive risk to Plaintiff's safety.  *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Consequently, Plaintiff's Eighth Amendment claim against Defendant Yuki will be dismissed.

With respect to Defendants Hadden and Walczak, Plaintiff avers that he spoke to Defendant Hadden prior to leaving segregation on June 10, 2020, and told him "that [he] believed the assault came from Sterle because [he] wrote a PREA on her and she was taken out of Unit 4." (ECF No. 1, PageID.7.)  Defendant Hadden asked if Plaintiff felt safe from future assault if he returned to Unit 4, and Plaintiff responded he did "as long as Sterle wasn't there." (*Id.*)  After the second assault, Plaintiff told Defendants Hadden and Walczak that the assaults had been orchestrated by Defendant Sterle and asked for a transfer or protective custody. (*Id.*)  Plaintiff was placed in long term administrative segregation pending a transfer, but was moved back to general

population in Unit 5 after seven months because transfers were not occurring due to the COVID-19 pandemic.  (*Id.*)  Plaintiff subsequently learned that inmate Taylor was in the same unit, and inmate Taylor wrote an affidavit stating that Defendant Sterle had offered to compensate him if he assaulted Plaintiff again.  (*Id.*, PageID.7–8.)  Nothing in the complaint, however, suggests that Defendants Hadden and Walczak were personally aware of or responsible for Defendant Sterle's return to Unit 4.  Likewise, nothing in the complaint suggests that Defendants Hadden and Walczak were aware of any excessive risk to Plaintiff's safety posed by any inmate in Unit 5—including inmate Taylor who, apparently, did not pose any threat to Plaintiff at all in Unit 5—and deliberately ignored that risk.  *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.  Therefore, Plaintiff's Eighth Amendment claims against Defendants Hadden and Walczak will also be dismissed.

### C.    Eighth Amendment claims against Defendant Sterle

Although Plaintiff has failed to state an Eighth Amendment claim against Yuki, Hadden, or Walczak, the assaults he endured at the hands of other inmates at Defendant Sterle's urging might be characterized as deliberately indifferent to Plaintiff's safety or, alternatively, as an "unnecessary and wanton infliction of pain" which is also prohibited by the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Sterle.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Yuki, Hadden, and Walczak will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's First Amendment retaliation claim and his Eighth Amendment claim against Defendant Sterle remain in the case.

An order consistent with this opinion will be entered.


Dated:    February 1, 2022                    /s/ Robert J. Jonker
                                              ROBERT J. JONKER
                                              CHIEF UNITED STATES DISTRICT JUDGE